IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JUAN ZAMORA,

    Plaintiff,

v.                                                                                                                                   No. 20-cv-1178 SMV

**KILOLO KIJAKAZI,**
Acting Commissioner of the Social Security Administration,[1]

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Plaintiff's Motion to Remand or Reverse Agency Decision and Brief in Support [Docs. 26, 27], filed on August 17, 2021. The Commissioner responded on November 10, 2021. [Doc. 31]. Plaintiff replied on December 29, 2021. [Doc. 36]. The parties have consented to my entering final judgment in this case. [Doc. 7]. Having meticulously reviewed the entire record, the Court finds that remand is not warranted. Contrary to Plaintiff's arguments, the Administrative Law Judge's ("ALJ's") decision establishes that he considered Plaintiff's lower back pain and knee pain and applied the correct legal standards. Accordingly, the Motion will be denied. *See* 42 U.S.C. §405(g).

### Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were

---

[1] Kilolo Kijakazi is the current Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Commissioner Andrew Saul as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

applied.[2] *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks omitted).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481. This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

**Applicable Law and Sequential Evaluation Process**

In order to qualify for disability benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process.  20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).  At the first four steps of the evaluation process, the claimant must show: (1) he is not engaged in "substantial gainful activity"; *and* (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) his impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) he is unable to perform his "past relevant work."  20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.  If he cannot show that his impairment meets or equals a Listing, but he proves that he is unable to perform his "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity ("RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

**Procedural Background**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on January 22, 2018. Tr. 15. He alleged a disability-onset date of September 16, 2018. *Id.* ALJ Michael Leppala held a hearing on December 3, 2019, in El Paso, Texas. Tr. 15, 50. Plaintiff appeared in person with his attorney. Tr. 15, 50. The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Cornelius J. Ford. Tr. 15, 49.

The ALJ issued his unfavorable decision on March 2, 2020. Tr. 29. He found that Plaintiff met the insured status requirements through December 31, 2022. Tr. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post-right-shoulder surgery, carpal tunnel syndrome, "SLAP superior labral tear,"[4] and obesity. Tr. 18. The ALJ found that the following impairments were not severe: obstructive sleep apnea, diabetes mellitus, hypertension, depression, and substance use disorder, alcohol. *Id.* The ALJ did not mention Plaintiff's lower back or knee problems at step two, despite evidence of these conditions in the record. He made no finding either way whether they were severe or non-severe. Tr. 18–19.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 19–20. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 20–28. Although the ALJ failed to make findings on Plaintiff's lower back pain and knee pain

---

[4] Neither the ALJ nor counsel in this case define SLAP. Tr. 15–29; [Docs. 27, 31].

at step two, his discussion about the RFC assessment is replete with references to them. Tr. 22–28. In fact, in explaining why he disagreed with the non-examiners' opinions that Plaintiff was capable of a limited range of *light* work, the ALJ explicitly found that their opinions "were not entirely consistent with the record showing progressive low back pain." Tr. 27. Thus, the ALJ assessed a limited range of *sedentary* work. Tr. 20. In other words, the ALJ assessed a more restrictive RFC explicitly because of Plaintiff's lower back pain. Tr. 27. The ALJ's final RFC assessment was:

> [Plaintiff] has the [RFC] to occasionally lift and/or carry 10 pounds, stand and/or walk for about two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday, all with normal breaks. He is further limited to occasionally climbing ladders, ropes, or scaffolds, frequently balancing, and occasionally reaching with his right upper extremity.

Tr. 20.

At step four, the ALJ found that Plaintiff was unable to return to his past relevant work as an electrician's helper. Tr. 28. Accordingly, he went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 28–29. He found that Plaintiff could perform work—such as lock assembler and dowel inspector—that existed in significant numbers in the national economy and, therefore, was not disabled. Tr. 29. Ultimately, the ALJ determined that Plaintiff had not been under a disability as defined by the Social Security Act and denied Plaintiff's claims. Tr. 29. The Appeals Council denied review on September 11, 2020. Tr. 1–5. Plaintiff timely filed the instant action on November 12, 2020. [Doc. 1].

**Discussion**

Plaintiff argues that the ALJ's decision ignores medical records relevant to his lower back pain and knee pain. [Doc. 27] at 5. He argues the ALJ must have ignored his lower back and knee pain because he omitted them from his step-two findings. *Id.* at 6. Finally, Plaintiff argues that the ALJ applied an incorrect legal standard when he used the phrase "disabling severity." *Id.* These arguments are contradicted by the ALJ's decision and the record. The ALJ's decision includes many explicit references to Plaintiff's lower back and knee pain, to the medical records that evidence the conditions, and even an explicit finding that the RFC assessment was restricted due to Plaintiff's lower back pain. Tr. 27. Plaintiff fails to show any reversible error. The Motion will be denied.

Plaintiff first argues that the ALJ committed reversible error when he failed to "consider and opine" on Plaintiff's "lower back and sciatic pain and knee pain."[5] [Doc. 27] at 5. Specifically, Plaintiff points to seven pages of medical records that he believes the ALJ ignored. [Doc. 27] at 5 (citing Tr. 872, 873, 875, 1021–24). As an initial matter, the ALJ said he considered all the evidence, *e.g.*, Tr. 16, and the Court takes him at his word. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) ("Where, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word.") (internal quotation marks and brackets omitted).

More to the point, however, the Court has very thoroughly reviewed the medical records dated June 3, June 14, and October 28, 2019, which cover the seven disputed pages. Tr. 869–81

---

[5] Plaintiff uses various terms—essentially interchangeably—to refer to his lower back condition, including but not limited to: sciatica, *e.g.*, [Doc. 27] at 5; lower back pain, *e.g.*, *id.*; spondylosis, *e.g.*, *id.* at 3; myalgia in lower back, *e.g.*, *id.* at 4; chronic back pain, *e.g.*, *id.* at 5; back injury, *e.g.*, *id.* at 6; back diagnosis, *e.g.*, *id.*; back impairment, *e.g.*, *id.* For clarity, this Court attempts to use only "lower back pain" or "lower back condition."

(June 3, 2019), 1027–32 (June 14, 2019), Tr. 1021–26 (October 28, 2019). Those records establish, in relevant part, the following: On June 3, 2019, Plaintiff visited a nurse practitioner, who diagnosed sciatica and referred Plaintiff to a pain-management clinic. Tr. 869–81. Plaintiff went to the pain-management clinic on June 14, 2019. Tr. 1027–32. Dr. Coleman, the pain-management specialist, diagnosed (1) pain in the right shoulder; (2) radiculopathy, lumbar region; (3) pain—chronic pain syndrome; and (4) myalgia, other site. Tr. 1030. He prescribed a right suprascapular nerve block for Plaintiff's right shoulder, a ZTlido patch for his chronic pain syndrome, a referral for a psychological evaluation for a neurostimulator trial to address his chronic pain syndrome, and gabapentin for his myalgia. Tr. 1030–31. Plaintiff was seen again at the pain-management clinic on October 28, 2019. Tr. 1021–26. At that visit, Dr. Bergsten, another pain-management specialist, diagnosed (1) other spondylosis, lumbar region; (2) pain in right shoulder; (3) pain—chronic pain syndrome; and (4) myalgia, other site. Tr. 1024. Dr. Bergsten prescribed "bilateral medial branch blocks bilateral L3,L4,L5" for Plaintiff's spondylosis, lumbar region. *Id.*

Plaintiff implies that the ALJ ignored all this evidence. *See* [Doc. 27] at 5; [Doc. 36] at 4. (arguing that the ALJ's decision "discusses only opinions from before the 2019 back evaluations and treatment, and the only one he finds 'somewhat persuasive' was the agency doctor [whose opinion is dated] February 19, 2019, . . . just when the back impairment began to be mentioned in the record."). Plaintiff is incorrect. The ALJ's decision explicitly discusses the diagnoses, treatments, and notes from the pain-management specialists. Tr. 25 (discussing the June 2019 appointment); Tr. 25–26 (discussing the October 2019 appointment). The ALJ devotes a full paragraph of discussion to each of these two pain-management records. Tr. 25–26. Plaintiff's

implication that the ALJ ignored the records from the pain-management specialists is contradicted by the record.

However, Plaintiff is correct that the ALJ did not discuss the June 3, 2019 note from the referring nurse practitioner. *See* [Doc. 27] at 5. The ALJ's decision does not mention her diagnosis of sciatica or the one-page sciatica-information sheet she included in her notes. Tr. 872; [Doc 27] at 5 (Plaintiff's citing the "diagram"). But the nurse practitioner's June 3, 2019 record is not probative under the circumstances here.[6] Accordingly, Plaintiff fails to show that he was prejudiced by the omission.

The ALJ's decision shows that he considered Plaintiff's lower back and knee pain. He repeatedly and explicitly discusses these conditions including discussing the pain-management records. Tr. 22 ("4/5 strength in the lower left extremity); Tr. 23 ("increased pain to his . . . back, knee"); *id.* ("knee pain with weakness"); Tr. 24 ("lower back pain, left knee pain"); Tr. 25 ("Range of motion showed normal findings of the back . . . bilateral knees"); *id.* ("low back pain"); *id.* ("tenderness to deep palpation in the lumbar spine"); *id.* ("radiculopathy of the lumbar region [and treatment of] right suprascapular nerve block and a spinal cord stimulation trial"); *id.* ("worsening low back pain [and] moderate distress"); *id.* ("low back pain [and] orthopaedic referral); *id.* ("continued low back pain); *id.* ("low back pain [and] lower back showed tenderness to deep palpation in the lumbar spine" and limited range of motion); Tr. 26 ("positive bilateral lumbar

---

[6] The nurse practitioner referred Plaintiff to specialists. The ALJ thoroughly discussed the specialists' records. The ALJ explicitly discussed the lower back and knee conditions in assessing the RFC. In fact, the ALJ explicitly restricted the RFC assessment due to the lower back condition. These circumstances show that the June 3, 2019 note from the referring nurse practitioner is not probative.

facet loading . . . Treatment consisted of bilateral medial branch blocks at L3, L4, and L5"); Tr. 27–28 ("The record . . . shows continued reports of lower back pain.").

Plaintiff's second argument for remand is that the ALJ failed to mention his lower back pain or knee pain at step two. *See* [Doc. 27] at 6. He complains that the ALJ failed to make findings as to whether these conditions were severe or non-severe. As Plaintiff sees it, this omission at step two shows both that the ALJ ignored the disputed conditions and that he failed to consider the "combined effect" of all his conditions. *Id.* at 6–7. The Court is not persuaded.

The Court agrees with Plaintiff that the ALJ should have made a step-two finding as to whether Plaintiff's lower back pain and knee pain were severe. But the error is not reversible. "As long as the ALJ finds one severe impairment, [he] may not deny benefits at step two but must proceed to the next step. Thus, the failure to find a particular impairment severe at step two is not reversible error when the ALJ finds that at least one other impairment is severe." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016). Here, the ALJ found at least one severe impairment at step two and proceeded through the sequential evaluation process. Tr. 18–24.

Although *Allman* can be distinguished from this case, it is still instructive. In *Allman*, the ALJ affirmatively found the impairment at issue to be non-severe. Whereas here, the ALJ made no finding either way about Plaintiff's lower back and knee pain. He simply did not mention it. Tr. 18–19. Nevertheless, *Allman* offers applicable guidance.

In *Allman*, the step-two error was not reversible because the plaintiff suffered no prejudice. The ALJ still proceeded through the sequential evaluation process and considered all the impairments, both severe and non-severe, in assessing the RFC. The same is true in this case. Plaintiff does not concede that the ALJ considered his lower back and knee conditions in assessing

9

his RFC. [Doc. 36] at 3. However, the Court disagrees with Plaintiff. The Court finds that the ALJ here explicitly considered Plaintiff's lower back and knee conditions in formulating the RFC. Tr. 22–28.

In fact, the ALJ in this case explicitly said that he was assessing a more restrictive RFC based on Plaintiff's lower back pain. Tr. 27. The state-agency medical consultants had opined that Plaintiff could perform a limited range of light work with an accommodation for his right shoulder. *Id.* The ALJ found those opinions only somewhat persuasive because "they [were] not entirely consistent with the record showing progressive low back pain." *Id.* Rather than assessing light work, like the agency consultants, the ALJ assessed a limited range of sedentary work, explicitly to account for Plaintiff's lower back pain. *Id.* Remand is not warranted on the ALJ's failure to make a step-two finding on Plaintiff's lower back and knee conditions, because the ALJ considered the conditions—and considered the combined effects of all Plaintiff's conditions—in making his RFC assessment.

Finally, Plaintiff argues that the ALJ applied an incorrect legal standard—"disabling severity." [Doc. 27] at 6. In relevant part, the ALJ's decision includes a summary of Plaintiff's testimony from the hearing, including Plaintiff's subjective complaints about his chronic back pain and chronic shoulder pain. Tr. 20. At the end of the summary, the ALJ found that "[d]espite [Plaintiff]'s subjective complaints, the evidence document[ed] only conservative treatment for chronic back pain and show[ed] few objective findings to support decreased mental or physical functioning, and therefore d[id] not support a finding of disabling severity." Tr. 20–21.

Plaintiff challenges the ALJ's use of the phrase "disabling severity." He argues:

> In addition to the evidentiary omission of the back and leg diagnoses, the wrong legal standard seems to have been applied, when the ALJ seems to to [sic] have omitted the back impairment because it was not, by itself, "of disabling severity," noting that the evidence showed "only conservative treatment for chronic back pain and shows few objective findings to support decreased mental or physical functioning, and therefore does not support a *finding of disabling severity."* (Italics added.) AR 20–21, As *Wells v. Colvin* holds, it is the combination of impairments, which might be non disabling separately, which the ALJ must consider in combination. That was not done with the back impairment, spon[d]ylosis, sciatica and leg pain.

[Doc. 27] at 6. This is the entirety of Plaintiff's argument. He fails to show any reversible error related to the phrase "disabling severity" in the ALJ's decision. If Plaintiff had shown that the ALJ had ignored any of Plaintiff's conditions (singly or in combination) or any probative medical record, his argument might hold water. But in this case, the ALJ considered Plaintiff's lower back and knee problems. *E.g.*, Tr. 22–28. The ALJ considered and discussed the medical records related to Plaintiff's lower back and knee problems. *E.g.*, *id.* The ALJ based his RFC assessment on the combination of Plaintiff's conditions, explicitly including his lower back pain. Tr. 27 (explaining that the non-examining opinions of light work should be further restricted to sedentary to reflect "the record showing progressive back pain."). Plaintiff's arguments to the contrary are unavailing. Remand is not warranted.

## Conclusion

Plaintiff fails to show any reversible error in the ALJ's evaluation of his lower back pain or knee pain. In assessing Plaintiff's RFC, the ALJ considered and made findings on Plaintiff's

lower back and knee conditions and the medical records related to those conditions. Similarly, Plaintiff fails to show that the ALJ applied any incorrect legal standard. The Motion will be denied.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Remand or Reverse Agency Decision [Doc. 26] be **DENIED**. The Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**
**Presiding by Consent**